AO 106 (Rev. 04/10)  Application for a Search Warrant

*PTG for AUSA McLoun*

# UNITED STATES DISTRICT COURT
### for the
Southern District of California

**FILED**

OCT 1 9 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) |
| Black Nextel Cellphone, Model: U5300 | ) |
| S/N:  U9V4CB9320201553, IMEI: 357541041584881 | ) |
| | ) |

Case No. **'18MJ11000**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 952, 960, 963 | Importation and Conspiracy to Import Methamphetamine |

The application is based on these facts:
See Attachment B

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

John Otis, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   *10-19-18*

_____
*Judge's signature*

City and state:  El Centro, California

Nita L. Stormes, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> CELLULAR TELEPHONE
> Nextel
> Model: U5300
> S/N: U9V4CB9320201553
> IMEI: 357541041584881
> **(Target Device);**



currently in the possession of the U.S. Department of Homeland Security, Homeland Security Investigations, which is located at 2051 N. Waterman Ave, Suite 100, El Centro, CA 92243 (Evidence Vault).

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Device** for evidence described below. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from third-party applications, photographs, audio files, videos, and location data, for the period of April 19, 2018 to May 20, 2018:

a.  tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States;

c.  tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States;

e.  tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

# AFFIDAVIT

I, John Otis, being duly sworn, hereby state as follows:

## INTRODUCTION

1.     This affidavit supports an application for a warrant to search the following electronic device (**Target Device**):

      a.     CELLULAR TELEPHONE
              Black Nextel Cellphone
              Model: U5300
              S/N:  U9V4CB9320201553
              IMEI: 357541041584881
              (**Target Device**);

as described in Attachment A, and seize evidence of crimes, as further described in Attachment B, specifically, violations of Title 21, United States Code, Sections 952, 960, and 963. This search supports an investigation and prosecution of Ubaldo SOBERANES for the crimes mentioned above. A factual explanation supporting probable cause follows.

2.     The **Target Device** was seized on May 19, 2018 from SOBERANES after he drove a Dodge Dakota into the Calexico West Port of Entry with approximately 35 kilograms of methamphetamine hidden in the tires. The **Target Device** is currently in the possession of US Department of Homeland Security Evidence Vault located at 2051 N. Waterman Ave., Suite 100, El Centro, CA 92243.

3.     Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4.     The information contained in this affidavit is based upon my experience and training and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from my personal investigation of this matter and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents

regarding this investigation.  Instead, it contains only those facts necessary to establish probable cause.

### EXPERIENCE AND TRAINING

5.   I am a Special Agent with Homeland Security Investigations (HSI), which is a component agency of the Department of Homeland Security (DHS).  I have been employed as an HSI Special Agent since June 2017.  I am currently assigned to the HSI Calexico field office in Calexico, California.   My job duties are to investigate immigration-document/benefit fraud and the smuggling of controlled substances into the U.S.  I have been cross-designated by the U.S. Drug Enforcement Administration (DEA) to conduct narcotics investigations and enforce provisions of the Federal Controlled Substances Act, pursuant to Title 21 of the United States Code.  Prior to employment with HSI, I was a federal law enforcement officer with U.S. Border Patrol (BP), which is also a component of the DHS.  I was assigned as a Border Patrol Agent from August 2008 to June 2017 at Calexico, California.  My primary duties were interdicting undocumented aliens; my duties also included the interdiction of controlled substances.   Prior to my career in law enforcement, I received a Bachelor of Arts degree from Brigham Young University, in Provo, Utah.

6.   As an HSI Special Agent, my formal training consisted of six months of residential instruction at the Federal Law Enforcement Training Center in Glynco, Georgia, which included training related to narcotics and dangerous drugs.  I have participated in training programs related to controlled substances, including but not limited to marijuana, cocaine, methamphetamine, and heroin.  I have also received training in the methods used by narcotics traffickers to import, distribute, package and conceal controlled substances.  Moreover, I have participated in numerous investigations and executed arrests for drug-related offenses, including possession with the intent to distribute, transportation, and the importation of controlled substances.

7.   Additionally, through the course of my duties as a Special Agent, I have talked with other experienced narcotics investigators and received informal training regarding illegal drug trends and methods of operation for multi-kilogram drug dealing and

2

1   trafficking in the San Diego and Imperial Valley areas.

2       8.    Based on my training and experience, I am familiar with the ways in which
3   drug smugglers and traffickers conduct their business. Indeed, during the course of my
4   duties I have (1) worked as a case agent, directing specific drug-related investigations; (2)
5   worked as a surveillance agent who observed and recorded movements of individuals
6   suspected of trafficking drugs; (3) participated in the execution of search warrants related
7   to drug investigations; (4) initiated and executed numerous arrests for drug-related
8   offenses, including possession with the intent to distribute; and (5) interviewed criminal
9   defendants, witnesses, and informants in furtherance of investigations into the illegal
10  smuggling and trafficking of controlled substances. Through these duties, I have gained a
11  working knowledge and insight into the operational habits of drug smugglers and
12  traffickers.

13      9.    Based upon my training and experience and consultations with law
14  enforcement officers experienced in drug smuggling and trafficking investigations, and all
15  the facts and opinions set forth in this affidavit, I submit the following:

17      a.    Drug smugglers and traffickers will use cellular/mobile telephones because
    they are mobile and they have instant access to telephone calls, text, web,
18  and voice messages;

19      b.    Drug smugglers and traffickers will use cellular/mobile telephones because
20  they are able to actively monitor the progress of their illegal cargo while the
    conveyance is in transit;
21

22      c.    Drug smugglers and traffickers and their coconspirators will use
23  cellular/mobile telephones because they can easily arrange and/or determine
    what time their illegal cargo will arrive at predetermined locations;
24

25      d.    Drug smugglers and traffickers will use cellular/mobile telephones to direct
    drivers to synchronize an exact drop off and/or pick up time of their illegal
26  cargo;

27      e.    Drug smugglers and traffickers will use cellular/mobile telephones to notify
28  or warn their coconspirators of law enforcement activity to include the
    presence and posture of marked and unmarked units as well as the

3

operational status of checkpoints and border crossings; and

f.    Drug smugglers and traffickers and their coconspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

10.    Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies that searches of cellular/mobile telephones sometimes yields evidence:

a.    tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute methamphetamine or controlled substances within the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or controlled substances within the United States;

c.    tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or controlled substances within the United States;

4

d.     tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

11.     Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

12.     Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months—this planning often occurs through mobile telephones. Additionally, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that coconspirators are often unaware when a fellow coconspirator has been arrested and will attempt to communicate with that coconspirator via mobile telephone after his or her arrest to determine the whereabouts of drugs that are being transported.

### FACTS SUPPORTING PROBABLE CAUSE

13.     According to a report prepared by U.S. Customs and Border Protection Officer (CBPO) J. Duarte, on May 19, 2018, at approximately 11:40 a.m., he encountered

SOBERANES while conducting inspections in lane five (5) at the Calexico, California West POE. SOBERANES was the driver and sole occupant of a red 2001 Dodge Dakota bearing California license plate CAUS/96638K2. CBPO Duarte asked SOBERANES if he had crossed the vehicle before. SOBERANES stated he had recently purchased the vehicle and crossed it numerous times. CBPO Duarte checked vehicle crossings on the vehicle and noticed that the vehicle had no previous crossings. CBPO Duarte asked SOBERANES where he was going and if he had anything to declare. According to CBPO Duarte, SOBERANES replied that she was going to El Centro, California and claimed he had nothing to declare. CBPO Duarte escorted SOBERANES and the 2001 Dodge Dakota to secondary inspection.

14. According to a report prepared by CBPO E. Leon, on May 19, 2018, he screened SOBERANES's 2001 Dodge Dakota with his assigned Narcotic Human Detector Dog (NHDD) "Rubin #170287." CBPO Leon noted Rubin alerted and responded to a trained odor emanating from all four tires of the vehicle.

15. According to a report prepared by CBPO M. Moreno, on May 19, 2018, he conducted a Z-Portal (X-Ray) screen of the 2001 Dodge Dakota. CBPO Moreno noted the x-ray inspection revealed apparent anomalies inside the tires of the vehicle.

16. According to a report prepared by CBPO R. Meza, on May 19, 2018, he was tasked with the secondary vehicle inspection and evidence processing of the Dodge Dakota that SOBERANES was driving. CBPO Meza's inspection resulted in discovery of packages concealed inside all four tires. CBPO Meza discovered a total of thirteen (13) packages, with an approximate weight of 35.46 kilograms (kg). CBPO Meza's inspection revealed that all of the packages contained a crystalline-substance. According to CBPO Meza's report, the crystalline-substance in one of the packages field-tested positive for properties of methamphetamine.

17. On May 19, 2018, at approximately 12:30 p.m., I was notified of the methamphetamine seizure and responded to the Calexico West POE where SOBERANES,

6

the 2001 Dodge Dakota, methamphetamine, and the **Target Device** were being held for further processing.

18.    At approximately 1:00 p.m., I made contact with SOBERANES, along with HSI SA Andre Parisella, in the holding cell of the security office at the Calexico, California West POE. I escorted SOBERANES to an interview area where a Personal History Report DEA-202 form was completed. I made note that SOBERANES had $400 U.S. dollars (USD) cash. SOBERANES stated that he resided at a hotel in Mexicali, Mexico and described his occupation as a field worker.

19.    A Black Nextel Cellphone **(Target Device)**, was seized from SOBERANES by CBPO Meza and was provided to me. When I spoke with SOBERANES, he talked about his cellular telephone, from the 2001 Dodge Dakota, and described it. The description was consistent with the **Target Device**. SOBERANES stated that he did not know there were drugs in the vehicle.[1]

20.    My review of the Treasury Enforcement Communications System Records (TECS) for SOBERANES, reveals that May 19, 2018—the date of his arrest—was the first time he crossed the United States/Mexico border in the 2001 Dodge Dakota.

21.    Based upon my experience and investigation in this case, there is probable cause to believe that SOBERANES, as well as other persons currently unknown, were involved in an ongoing conspiracy to import and transport methamphetamine. Based on my experience investigating drug smugglers and traffickers, there is probable cause to believe that SOBERANES used the **Target Device** to coordinate with coconspirators regarding the importation, transportation, and distribution of methamphetamine, and to otherwise further this conspiracy both inside and outside of the United States. There is also probable cause to believe that recent calls made and received, telephone numbers,

[1] A logical extraction of the contents of the **Target Device** was performed using the Cellebrite machine at the port of entry. None of those contents are relied upon for purposes of establishing probable cause in this affidavit. Additionally, I would seek a warrant to search the **Target Device** regardless in order to obtain a full forensic examination.

contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device**, which may identify other persons involved in drug trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, there is probable cause to believe that information relevant to the drug smuggling and trafficking activities of Ubaldo SOBERANES, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**.

## METHODOLOGY

22. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have

1  potentially relevant data stored that is not subject to such acquisition, the examiner must
2  inspect the device manually and record the process and the results using digital
3  photography. This process is time and labor intensive and may take weeks or longer.

4          23.     Following the issuance of this warrant, I will collect the **Target Device** and
5  subject it to analysis. All forensic analysis of the data contained within the telephone and
6  its memory cards will employ search protocols directed exclusively to the identification
7  and extraction of data within the scope of this warrant.

8          24.     Based on the foregoing, identifying and extracting data subject to seizure
9  pursuant to this warrant may require a range of data analysis techniques, including manual
10 review, and, consequently, may take weeks or months. The personnel conducting the
11 identification and extraction of data will complete the analysis within ninety (90) days,
12 absent further application to this court.

13                                    **CONCLUSION**

14         25.     Based on all of the facts and circumstances described above, there is probable
15 cause to conclude that   Ubaldo SOBERANES used the **Target Device** to facilitate
16 violations of Title 21, United States Code, Sections 952, 960, and 963.

17         26.     Because the **Target Device** was promptly seized during the investigation of
18 Ubaldo SOBERANES' smuggling activities and has been securely stored, there is probable
19 cause to believe that evidence of illegal activities committed by Ubaldo SOBERANES
20 continues to exist on the **Target Device**.

21         27.     Based on the above facts and my training and experience, there is probable
22 cause to believe that evidence of violations of Title 21, United States Code, Sections 952,
23 960, and 963 will be found within the date range from April 19, 2018 to May 20, 2018.

24
25
26
27
28

1    28.    WHEREFORE, I request that the court issue a warrant authorizing law

2  enforcement agents and/or other federal and state law enforcement officers to search the

3  items described in Attachment A and to seize the items listed in Attachment B, using the

4  methodology described above.

5

6        I swear the foregoing is true and correct to the best of my knowledge and belief.

7

8                                        John Otis
                                         HSI Special Agent
9

10   Subscribed and sworn to before me this 19th day of October, 2018

11

12   Hon. Nita L. Stormes
     United States Magistrate Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          10